### EDWARD DUDLEY v. CAMDEN AND PHILADELPHIA FERRY COMPANY.

1. A ferryman is not chargeable for the absolute safety of property retained by a passenger in his own custody and under his own control.

2. The property, in such cases, is not at the sole risk of either party. The ferryman undertakes for its safety, as against any defects in his boat, or the want of proper appliances for its security, as well as for the skill and care of himself and his servants. The passenger is bound to exercise ordinary care and skill in its management; and if he is guilty of negligence contributory to the injury, he cannot recover.

3. Where the ferryman carries the property gratuitously, he is liable only for gross negligence.

On rule to show cause.

Argued at November Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiff, *P. L. Voorhees.*

For the defendants, *E. T. Green.*

The opinion of the court was delivered by

VAN SYCKEL, J.   In April, 1877, the plaintiff drove his horses and carriage upon the defendants' ferry boat, at Philadelphia, for the purpose of crossing over to Camden.   Before the boat left the slip, the horses became frightened, and ran over the bow of the boat into the river.   The horses were drowned, and the carriage and harness damaged.   This action is brought to recover compensation for the loss.

A ferryman is not chargeable as a common carrier, for the

absolute safety of property retained by a passenger in his own custody and under his own control.

In *White* v. *Winnisimmet Co.*, 7 *Cush.* 155, the plaintiff, who drove his horse upon the ferry boat and retained the custody of him, was held to be without remedy for the loss of the horse, which became frightened at the bell and jumped overboard, because he failed to exercise proper care and oversight over his property.

That the doctrine of contributory negligence is applicable to cases of this character, is the settled rule in New York. *Clark* v. *Union Ferry Co.*, 35 *N. Y.* 485; *Wyckoff* v. *Queens County Ferry Co.*, 52 *N. Y.* 32. The same rule is recognized in *Willoughby* v. *Horridge*, 12 *C. B.* 742.

The property, in such cases, is not at the sole risk of either party. The ferryman undertakes for its safety, as against any defects in his boat, or the want of proper appliances for the security of goods committed to him, as well as for the skill and care of himself and his servants. The defendants in this case, if carrying for hire, would have been responsible for diligence, care, and skill on their part, and would have been bound to provide such safeguards as, under all ordinary circumstances, would have saved the plaintiff from loss. If the plaintiff retained possession of his property, and assumed the care of it, he also was bound to exercise ordinary care and prudence in the management of it, to prevent loss or injury, and if he was guilty of negligence contributory to the injury, he cannot recover. *Wharton on Negligence*, § 707.

The plaintiff's account of the transaction is that he drove on the boat in a fall-top buggy, and, wishing to blanket his horses, he wrapped the lines around the whip and got out on the right-hand side, and walked around to the wheel on the left side, where he could not reach the lines. While in that situation, the horses made a step or two forward, striking the wheel against the iron guard of the boat, which made a noise that frightened them, and they immediately started, and plunged into the river.

The plaintiff, not being within reach of the lines, had noth-

ing to check them by. He admits that if he had been at their heads, he could have stopped them. He says they were fine, high-strung horses, but gentle. It is manifest, from the plaintiff's own statements, that it was necessary to keep these horses under proper control, to insure their safety, and it was, clearly, negligence on his part, in the situation in which he was placed, to put himself in a position where he had no command of them. They were as effectually out of his reach as if he had been at the other end of the boat. When he put himself where he could not seize the lines, he assumed the risk incident to it. The defendants had not taken, nor had they been called upon by the plaintiff to take any oversight of the property, and they had, therefore, a right to presume that the plaintiff would use the reasonable care requisite to secure safety.

In this case, the defendants were unpaid bailees; the plaintiff took his horses upon their boat without being required to pay any toll. Regarding the degree of care which the plaintiff could lawfully exact of the defendants, in that character, his own negligence is still more manifest. Ever since the *dictum* of Lord Coke, founded upon Southcote's case, that the bare acceptance of goods by a mere depositary, implied a promise to keep them safely, was overruled in Coggs *v.* Bernard, degrees of negligence have been recognized in the English law. For a reference to the long line of authorities, see the notes to that case in 1 *Smith's Lead. Cas.*

In *Foster* v. *Essex Bank*, 17 *Mass.* 479, Chief Justice Parker considered the doctrine entirely settled, that a mere depositary, without any special undertaking, and without reward, is not answerable for the loss of goods deposited, but in case of gross negligence, which is equivalent to fraud, in its effect upon contracts.

That a naked bailee is responsible only for gross negligence, is the admitted law of New York. *Edson* v. *Weston*, 7 *Cow.* 278 ; *Beardslee* v. *Richardson*, 11 *Wend.* 25. This rule was applied in the later English case of *McCarthy* v. *Young*, 6 *H. & N.* 329.

While there are cases which criticise the attempt to define, precisely, what constitutes gross negligence, and the difference between negligence and gross negligence, the necessity of distinguishing between different degrees of care, has never been denied.

In *Grill* v. *Iron Screw Collier Co.*, *L. R.*, 1 *C. P.* 600, where the propriety of establishing degrees of negligence was questioned, it was admitted that the line between the degrees of care cannot be disregarded. The absence of the requisite care is the presence of negligence. Where a lesser degree of care is due, its absence shows a greater degree of negligence. It is wholly immaterial, therefore, whether it is termed gross negligence or the absence of slight care. To make the negligence actionable, there must be a failure to exercise that degree of care only which can be exacted of the defendant in the character he occupies. That one who permits his friend to deposit his valuables in his safe, temporarily, should not be held to the same degree of responsibility which attaches to a safe deposit company, is a rule of such obvious justice, that it must inhere in every system of law that equitably regulates human conduct. The defendants in this case, as gratuitous bailees, were liable only for the omission of that care which the most inattentive and thoughtless of men never fail to take of their own affairs. No such carelessness was shown on the trial below.

The rule to show cause should be made absolute.