ELEANOR OLIVER, PLAINTIFF-RESPONDENT, v. MacKIN-LAY KANTOR AND MAY GREENWELL, DEFENDANTS-APPELLANTS.

Submitted January 17, 1939—Decided May 17, 1939.

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the appellants, *Townsend & Doyle* (*Mark Townsend,* of counsel).

For the respondent, *William K. Flanagan* (*George L. Sachs,* of counsel).

530

The opinion of the court was delivered by

HEHER, J. This is an action in tort for "gross" negligence in the operation of an automobile on a public highway in the State of Florida on February 18th, 1938, proximately resulting, so it is claimed, in severe injuries to plaintiff, an occupant thereof. While the complaint charged "willful and wanton misconduct," that allegation was abandoned at the trial.

The vehicle was owned by the defendant Kantor; and the operator was the defendant Greenwell, his servant and agent. Concededly, plaintiff's status was that of a nonpaying "guest;" and defendants pleaded and proved a statute of the State of Florida providing that, "in case of accident," a person so situated shall not have a cause of action for damages against the owner or operator of the vehicle, "unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator," and the injury shall have been the proximate result thereof, "provided that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury. * * *" Chapter 18033 Laws of Florida (1937 Laws, p. 671). It was averred in the answer that, in the operation of the vehicle, there was no "violation" of this enactment. By way of reply, plaintiff interposed a general denial of the allegations of the answer.

Motions for a nonsuit and a directed verdict in favor of defendants were denied; and the issue of gross negligence was submitted to the jury. These motions were grounded in the contentions that there was no evidence of gross negligence, and that, in any event, such delinquency by the operator was not imputable to the owner. There was a verdict for plaintiff; and both defendants appeal from the judgment entered thereon.

The single question raised by the grounds of appeal is the propriety of the submission to the jury of the issue of gross negligence. There was no evidence as to what constituted "gross" negligence under the law of Florida; and defendants

now maintain that the "common law doctrine of gross negligence" provided the sole criterion of liability, and that, regardless of the Florida statute adverted to, this particular issue was one of law for the court, unless the evidence afforded a tangible basis for a finding of such misconduct according to the common law standard—citing *Murphy* v. *North Jersey Street Railway Co.*, 71 *N. J. L.* 5. We are of the view that in this regard the evidence presented an issue for resolution by the jury.

While proceeding on a straight macadam highway, at least twenty feet wide, with grass-covered shoulders four feet in width on either side, the automobile ran off the road and collided with "a large pine pole," carrying electric transmission lines, located in a ditch beyond the shoulder at a distance of eight or ten feet from the edge of the road. This pole was "about two feet" in diameter; and the impact was so violent that the pole "was pushed clear of its anchorage or broken off. * * * It may have been pushed right out of the ground." The mishap occurred about ten-thirty P. M. The weather was clear; and the road was dry and free of traffic. The car "was smashed. The front radiator and left front fender were all mashed together; the frame was sprung, the axle broken, and wheel and windshield broken."

Plaintiff testified that, when the vehicle left the road, its rate of movement was "about thirty-five or forty miles an hour." When it was about fifty feet from the pole, she observed that it was headed in that direction. She testified that, perceiving the imminent danger, she inquired of defendant Greenwell: "May, what are you doing, can't you see?" The reply was in the affirmative, but the vehicle continued on with unabated speed until the collision occurred. Apparently, the operator made no effort to change its course. On the way to the hospital, plaintiff asked Miss Greenwell "what" had "happened," and she answered: "I don't know." A day or two later, Miss Greenwell gave this explanation in response to plaintiff's further inquiry as to the cause of the accident: "You see, I remember smoking a cigarette and trying, leaning or attempting to throw, or trying to throw the butt out of the window, and the window was shut and the

·cigarette came back in my face." This was received as an admission binding upon the defendant Greenwell only. She was not called as a witness by the defense, and so the case was closed without testimony from her as to the cause of the ·mishap.

Negligence cannot be treated in the abstract. "Gross" ·negligence is a relative term that does not lend itself to precise definition automatically resolving every case. It was introduced into the common law from the civil law; and, on the hypothesis that in a case such as this the duty imposed by the law is to exercise such care as is commensurate with the risk of danger, the modern trend is to reject the common law divisions of negligence into "gross," "ordinary" and "slight," as having "no distinctive meaning or importance in the law," and tending to uncertainty and confusion in cases such as this, where the duty claimed to have been breached does not have a statutory or contractual origin. *Dudley* v. *Camden and Philadelphia Ferry Co.*, 42 *N. J. L.* 25, 28; *Harber* v. *Graham,* 105 *Id.* 213; *The Steamboat New World* v. *King,* 16 *How.* 469, 474; 12 *L. Ed.* 1019, 1021; *Cooley Torts* (4*th ed.*), §§ 456, 478; 45 *C. J.* 664, ·671, 680.

At most, the difference between "gross" and "ordinary" ·negligence is one of degree rather than of quality. While there is authority for the view that gross negligence is not ·characterized by inadvertence, but connotes "some degree of intent to cause" injury (see cases cited in 20 *R. C. L.* 23), the commonly accepted definition of the term is the want or absence of, or failure to exercise, slight care or diligence. This seems to be the definition at common law. *Dudley* v. *Camden and Philadelphia Ferry Co., supra;* 45 *C. J.* 667. A distinction of substance has been noted between wanton misconduct and gross negligence. *Bordorano* v. *Senk,* 109 *Conn.* 428; 147 *Atl. Rep.* 136; *In re Greene,* 87 *Fed. Rep.* (2*d*) 951. For a different view, see *In re Wegner,* 88 *Id.* 899.

The difference between "gross" and "ordinary" negligence ·being one of degree merely, we entertain the view that, under ·the evidence here adduced, uncontradicted and unexplained .as it was, it was the function of the jury, in a special and

peculiar sense, to determine the degree of negligence. Under the circumstances, it was reasonably inferable that there was an absence of "slight care or diligence" in the operation of the vehicle. While plaintiff testified that its speed was thirty-five or forty miles per hour, the indisputable physical evidence tends to show a dangerous rate of movement—such as would obviously deprive the operator of the control requisite for plaintiff's safety. Plaintiff had never operated a motor vehicle, and her estimate of speed is to be considered in the light of her inexperience. And the movement of the car after the warning given by plaintiff demonstrates the utter absence of thought or effort by the operator directed to the avoidance of the danger foreseen by plaintiff. It is fairly inferable that the warning was timely if slight care for the passenger's safety had been used. It is therefore unnecessary to invoke the Florida statute in justification of the submission of this issue to the jury.

Judgment affirmed, with costs.