GLADYS CROTHERS, RESPONDENT, v. JULIUS CAROSELLI, APPELLANT.

Argued October 1, 1940—Decided November 25, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the appellant, *John F. Ryan.*

For the respondent, *Edward A. Markley (James B. Emory* and *Dominick J. Marchitto,* on the brief).

The opinion of the court was delivered by

PARKER, J. The case arose out of an automobile accident in the State of Florida. Defendant was driver of the car, and plaintiff the sole passenger therein by invitation of the defendant. It may be inferred that at that time they were formally or informally engaged to be married, though this is not material to the case. They had gone together in the car to Florida, traveling together in the daytime and each

staying at a different place every night; and after their stay in Florida, the two were returning to the north, the plaintiff's home being at Jersey City in this state.

The evidence shows that in the locality where the accident occurred the road was unfenced and that cattle were pastured on both sides of it and were free to move from one side to the other without interference; that defendant had been warned of these conditions; that about a quarter of a mile south of the accident there was a sign on the shoulder of the road which read "Warning, Cattle Ahead;" that the cattle were plainly visible, particularly on the right side of the road where the automobile was running. The road, according to the testimony, was level, the paved portion being about twenty feet wide, with two or three feet of dirt shoulder on each side. The date was June 30th, 1938, about six o'clock in the evening, and, according to the testimony, their destination was about seventy miles away.

As the plaintiff testified, and as the jury were entitled to find, while the defendant was driving at nearly sixty miles an hour with the cows in sight ahead, the plaintiff asked him to slow up the car. She testified that he never had driven so fast before. According to her testimony, defendant answered that he could make it, and as they approached the group of cows one of them started to cross from the right to the left; plaintiff again asked that defendant stop the car, he again refused, swerved to the left side of the road, the wheels went on the left shoulder, defendant then swerved to the right and the wheels went to the right shoulder; there was a second swerve to the left, the car upset and the plaintiff was severely injured.

At the time of the accident there was in effect a Florida statute dating from 1937 which was pleaded in the complaint and admitted in the answer. The pertinent part of the statute reads as follows:

"That no person, transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused

by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or willful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought, provided that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury."

The instructions of the court on the subject of gross negligence, which was the gravamen of the complaint, were not excepted to and, of course, are not challenged here. There was a verdict and judgment for the plaintiff, and the grounds of appeal relied on are the refusal of the court to nonsuit, and to direct a verdict for the defendant, and three rulings on evidence, which will be considered in due order.

As to the motions to nonsuit and to direct, both motions are rested on the ground that the plaintiff had failed to establish a cause of action by any proof constituting gross negligence (we quote the language of counsel) and on the further ground that if any care was exercised by the defendant he was not guilty of gross negligence. Both motions were denied, and in denying them the court seemed to express the view that the Florida statute which, as we have just seen, provides that "the question or issue of negligence, gross negligence, * * * shall * * * be solely for the jury," was controlling, but did not rest wholly on that ground. We think that the motions were rightfully denied, and think it well to add that we do not find it necessary to hold that the language of the Florida statute just quoted is controlling on our courts. In our view there was a case for the jury apart from any possible application of that statute. In our reported decisions there are several cases in which this question of gross negligence was involved. In *Harber* v. *Graham,* 105 *N. J. L.* 213, in the Court of Errors and Appeals, that court, speaking by the late Judge White, seemed to recognize the test of gross negligence as laid down in Massachusetts cases. So far as the report shows, the question of nonsuit was not considered, and the reversal turned on errors in the charge.

In *Siegel* v. *Saunders,* 115 *Id.* 539, likewise in the appellate court, the accident occurred in Virginia, where a similar statute was in force. A refusal to nonsuit or to direct for the defendant for failure to prove gross negligence was held to be proper. In *Garris* v. *Kline,* 119 *Id.* 435, the accident occurred in Virginia. The sole ground of appeal was that the trial court erred in refusing to direct a verdict for the defendant. The opinion indicates that excessive speed was an important feature in the claim of gross negligence. In *Oliver* v. *Kantor,* 122 *Id.* 528, in this court, the accident occurred in Florida. A recital of the evidence in that case shows that the accident occurred on a straight road twenty feet wide with shoulders four feet on each side as in the present case, although the time was at night. There was evidence that the plaintiff, seeing the car headed for an electric light pole, warned the driver, who was one of the defendants, but that no effort was made to change the course of the car. There was no evidence as to what constituted gross negligence under the laws of Florida; and Mr. Justice Heher, speaking for the court, said (at *p.* 532), that "the commonly accepted definition of the term is the want or absence of, or failure to exercise, slight care or diligence. This seems to be the definition at common law" (citing cases). It was held that it was the function of the jury to determine the degree of negligence, and that it was reasonably inferable that there was an absence of slight care or diligence in operation.

What we have in the present case, as the jury was entitled to find, was that the defendant was proceeding at about sixty miles an hour, that the cows were in plain sight and about to cross the road, and that plaintiff warned the defendant of the cows, and when at a distance of about a quarter of a mile, plaintiff requested the defendant to slow the car, but that he said "it is all right; I think I can make it." And again when they approached more nearly to the cows, plaintiff repeated her request, and defendant again refused. The accident followed almost immediately afterward. It was also in evidence, as we have said above, that previous to the trip the attention of the defendant had been called to the fact that cows were frequently on the road and that it was necessary

to be careful. In the present case a member of the Florida bar was called as a witness on the law of Florida, and testified that under the law of Florida gross negligence was want of slight care, and that this was a common law definition, and the witness cited the New Jersey case of Oliver *v.* Kantor already noticed above. The witness was asked: "You say that the Florida law as to what is meant by gross negligence is the same as the common law? *A.* Yes, sir." Further discussion of this point is needless.

We turn now to the rulings on evidence, excepted to, and assigned for error. They are three in number; (1) the exclusion of a writing allegedly signed by the defendant, though we do not find in the evidence any proof of that signature, but only a recital to that effect in a question by counsel which was not answered. This written paper consisted of four pages, and was marked for identification as *Exhibit D-1, a, b, c* and *d.* It is not printed in full. Only six lines are printed, two of them introductory: "I, Julius Caroselli [age and address] state:"—and the other four are obviously the basis of the first excluded question. We shall return to this in a moment. The writing was properly excluded, and for the fundamental reason that it was not proven, as the trial court distinctly and correctly held. It may be well to add that even if it had been proven, it is not laid before us in its entirety, but all that is printed is these six lines out of four pages, and naturally there is no telling what relevant and important language may have been included in the omitted portions.

Before the "statement" was offered, the defendant, sworn as a witness in his own behalf, was asked on direct a question reciting the testimony of plaintiff about the warning sign, and that she said to him "Don't you think you had better slow down?" and that he answered, "No, it is all right, I think I can make it." Counsel asked "Did she say that?" Defendant replied "I don't remember hearing her say that." This was evidently a surprise to examining counsel, who after two or three questions and a short colloquy, asked: "Was there any complaint about the method of the operator's operation of the car at any time?" To which the witness replied,

"Yes, sir." Counsel pleaded surprise, and handed to the witness the paper above described, and after the witness had examined it, asked whether it refreshed his recollection, and the reply was in the affirmative. Then followed two questions, the exclusion of which is assigned as error. The first was: "Then I will ask you: is it true that Miss Crothers never at any time during the trip down south, during your stay at Miami Beach, during the trip home, or during the accident, complained of your driving?" The second, "Is it true that even during the accident she did not complain to you about the method of your driving?" Both were leading, and objected to and properly excluded on that ground. Where "surprise" is alleged, and rested on the claim of previous inconsistent statements, the witness is temporarily under cross-examination, and it follows that leading is permissible and not the subject of judicial discretion. But these questions were direct examination, as they did not relate to the making of previous statements by the witness, but to the facts of the case.

It is well to consider whether the exclusion was proper on other grounds: and we think that it was proper.

As we understand the practice, when examining counsel is surprised by adverse testimony of his own witness, he may in effect cross-examine the witness as to whether he had not previously told a different story and what that story was. If the story was oral, oral testimony of what the witness had said is competent, even that of other witnesses. *State* v. *Kysilka,* 84 *N. J. L.* 6; *State* v. *Bovino,* 89 *Id.* 586. In the present case, the statement was in writing, and the settled rule in this state, as declared in *State* v. *Capiello,* 107 *Id.* 249, 252-3, is that the written statement can be made admissible only "by first laying a foundation therefor, and this must be done by calling the attention of the witness to the contents of the paper, and then asking him whether he had not made the statements contained therein." In the case at bar, the paper was shown to the witness but his signature to it was not proved, though twice assumed in unanswered questions, and he was not asked "whether he had made the statements therein," and as it did not go into evidence, there was

no proof of its contents. Assuming for present purposes that it was proper to ask the witness, whether the paper stated thus and so, this was not done; but the two questions under consideration assumed the existence of certain statements in the paper, and having no foundation to rest upon, were properly excluded. It will do no harm to add that the questions, as well as the statement, contained the word "complain" as descriptive of what plaintiff may have said about defendant's driving, and were therefore objectionable as involving a conclusion as to the meaning of what plaintiff may have said, rather than quoting the language that she used.

We find no error properly raised, and the judgment will therefore be affirmed.