138 N.J. Super. 503 (1976)
351 A.2d 409
MARY ROSEANNE DRANEY, PLAINTIFF,
v.
WILLIAM BACHMAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 13, 1976.
*504 Mr. Edwin J. McCreedy for plaintiff (Messrs. Conant and McCreedy, attorneys).
Mr. James D. Bride for defendant (Mr. Robert J. Casulli, attorney).
*505 DREIER, J.D.C., Temporarily Assigned.
Plaintiff in this auto negligence case has moved simultaneously (1) to amend her complaint to allege "gross negligence or wanton and willful conduct on the part of the defendant," and (2) for an order "granting partial summary judgment declaring that the defendant is guilty of [such] gross negligence and/or wanton conduct as a matter of law and further striking the defense of contributory negligence." Since this suit arose out of an automobile accident which occurred on October 5, 1974, it is governed by the comparative negligence statute, N.J.S.A. 2A:15-5.1 et seq., and is the first case discovered by this court to examine the continued viability of the concepts of gross negligence and willful and wanton conduct since the adoption of comparative negligence in New Jersey.[1]
The facts are not in dispute. On October 4, 1974 plaintiff was a passenger in an automobile owned and operated by defendant. Prior to the accident plaintiff had been on a social date with defendant, and while at plaintiff's home defendant *506 consumed all but a small part of a pint bottle of gin over a three-hour period. Thereafter, at about 11:30 P.M., plaintiff and defendant proceeded to a bar where they remained for about three hours, during which defendant consumed an additional three drinks and was noticeably belligerent toward another person. The parties left the bar at about 3 A.M. Another acquaintance solicited a ride from defendant, but while giving travel directions led him on a "wild goose chase," further aggravating defendant. He admittedly commenced driving at excessive speeds (in excess of 55 miles an hour in a 35 mile an hour zone), and then lost control of his vehicle while crossing railroad tracks around a curve. Plaintiff was injured when defendant hit a utility pole on the opposite side of the road. Defendant admitted being aware of his intoxication at the time of the mishap, prompting his guilty plea to operating a motor vehicle while impaired, in contravention of N.J.S.A. 39:4-50.1. A blood sample administered at the hospital revealed a blood alcohol content of .28. Defendant concluded his deposition stating that the accident happened "cause I was angry about a few different things that took place that night and because I was driving at an excessive rate of speed and also because I was drinking. For those three reasons."
There is no question but that an order amending the pleadings should be granted under circumstances where the new material could reasonably be the basis of a cause of action. Defendant waives his procedural objections to the timing of the accompanying summary judgment motion and agrees that this court should consider the amendment and summary judgment motions on their substantive merits.
The facts of this case are similar to those in Tabor v. O'Grady, 59 N.J. Super. 330 (App. Div. 1960), reh. 61 N.J. Super. 446 (App. Div. 1960). The rule established by Tabor is that a plaintiff who proves defendant's wanton and willful misconduct will not be barred by simple contributory negligence. The defendant must prove plaintiff's own wanton and willful misconduct in order to defeat such a claim.
*507 Considering the nature of defendant's conduct in such a "wanton and willful" case, the increased burden upon defendant was recognized as equitable in view of the then existing contributory negligence rule. That rule precluded recovery notwithstanding the fact that plaintiff's negligence was substantially less in degree than defendant's negligence, if both proximately contributed to the happening of the accident. Maccia v. Tynes, 39 N.J. Super. 1 (App. Div. 1956). Although the Supreme Court later, in O'Brien v. Bethlehem Steel Corp., 59 N.J. 114 (1971), reinterpreted and ameliorated the harshness of this rule by requiring that a plaintiff's negligence must be shown to have been a substantial factor in bringing about the harm complained of, the contributory negligence rule remained in force until the enactment of N.J.S.A. 2A:15-5.1 et seq. When the Tabor court considered this matter in 1960 it stated specifically that it was not applying rules of comparative negligence. 61 N.J. Super. at 452. It thus could not then have envisioned the application of its doctrine to our comparative negligence statute. Commentators, however, have viewed cases such as Tabor as a first step towards a crude comparative negligence system. Schwartz, Comparative Negligence, § 5.1 at 100 (1974); Harper & James, The Law of Torts, § 22.6 at 1215 (1956).
But this softening of the contributory negligence rule is one of two basic reasons for the harsher consequences of the "willful and wanton" negligence rules. The other, as noted by Professor Schwartz, is:
[D]efendant's negligence, gauged in terms of culpability, is so close to intentional wrongdoing that he should not have the benefit of contributory negligence. * * * Once a state has adopted comparative negligence [the amelioration] reason for the rule is removed, but the [culpability reason] remains. Thus the courts are presented with a very difficult issue if the legislature has given no guidance. [Schwartz, Comparative Negligence, § 5.3, at 105 (1974)]
There are three possible directions this court can take in applying the comparative negligence statute to this case, *508 assuming that defendant's conduct should be characterized as either "gross negligence" or "wanton and willful." First, this court could preserve the doctrine in Tabor, but impose upon it the comparative negligence rules, i.e., once willful and wanton conduct is shown by plaintiff, defendant must demonstrate plaintiff's willful and wanton conduct (as opposed to mere gross negligence) before the jury would be requested to apportion relative blame. If, however, the jury were to find that plaintiff's conduct did not rise to the level of "willful or wanton," it would be told to disregard plaintiff's conduct entirely, and find defendant 100% liable.
The second method would be to disregard the comparative negligence statute when dealing with willful and wanton conduct, but to apply it to all "degrees" of negligence, dropping any distinction between "gross" and other negligence  a modified Wisconsin rule.
The third method (as adopted in Wisconsin and other states, as will be discussed hereafter) is to discard the concepts of both gross negligence and wanton and willful conduct entirely for the purpose of comparative negligence evaluation, and permit the jury to assess blame by the percentages ascribed to the conduct of each party.
This court chooses to follow the second course of action.[2]
The Wisconsin case, Bielski v. Schulze, 16 Wis.2d 1, 114 N.W.2d 105 (Sup. Ct. 1962), considers the issue with all of its ramifications. The Wisconsin court determined that gross negligence and willful and wanton actions differed in *509 degree rather than kind from ordinary negligence, and determined that the Wisconsin comparative negligence statute (after which our own was patterned) took into account the more culpable type of conduct when comparing it with ordinary negligence.[3] Much as the court in Bielski, however, this court is concerned with the reasons why the various negligence rules have been established over the years, and why our Legislature instituted the doctrine of comparative negligence.
The aim of all litigation in the negligence field is to apportion the damages flowing from the accident in question in proportion to the fault of the respective parties. Where there is to be a departure from this goal (such as in the workmen's compensation field or compulsory "no-fault" auto insurance), the Legislature has so spoken. There is also a departure in the field of intentional torts so that punitive damages may be rendered against the tortfeasor. But within the area of unintentional torts, where the Legislature has not decreed a separate standard, apportionment based upon the respective fault of the parties is the rule, and this is the background against which the standards of N.J.S.A. 2A:15-5.1 et seq. should be examined.
Unlike other states adopting comparative negligence rules, New Jersey had already undergone a redefinition of terms. In this State the term "gross negligence" has often been confused with, yet at other times differentiated from, "willful, wanton or reckless" conduct. In the first Tabor opinion the defendant was found to be grossly negligent, but *510 upon reconsideration the court determined specifically that the conduct "passed entirely beyond mere negligence (of any degree) and that he was guilty of willful and wanton misconduct as a matter of law. * * *" 61 N.J. Super. at 452-453. It was only such willful and wanton conduct that is not subject to the defense of contributory negligence. The words "reckless" and "willful and wanton" were specifically distinguished from the "grossly negligent" standard in the earlier opinion, and it is this "wantonness" that is distinguished from "negligence in any degree" as being different in kind. 61 N.J. Super. at 454. New Jersey has in the past recognized the term "gross negligence." See Harber v. Graham, 105 N.J.L. 213, 215 (E. & A. 1928); Oliver v. Kantor, 122 N.J.L. 528, 532 (Sup. Ct. 1939), aff'd 124 N.J.L. 131 (E. & A. 1940), Crothers v. Caroselli, 125 N.J.L. 403, 406 (Sup. Ct. 1940), aff'd 126 N.J.L. 590 (E. & A. 1941); Cohen v. Press, 31 N.J. Super. 45 (App. Div. 1954), certif. den. 16 N.J. 197 (1954). A simple definition, set forth in the Oliver case, is "the want or absence of, or failure to exercise, slight care or diligence." 122 N.J.L. at 532. But we no longer ascribe different legal significance to different degrees of negligence,[4] although we do recognize various degrees of care (e.g., the increased duty imposed upon the common carrier). Solely insofar as our "gross negligence" concept is concerned, we can agree with the resolution of the problem as discussed in Bielski. This degree distinction, as noted in Bielski, should have no continued viability under our new statute.
Just as we earlier abolished the doctrine of last clear chance, assumption of risk and (recently) "slight" negligence, in order to temper harsh rules precluding recovery by relatively innocent plaintiffs, the court in Tabor v. O'Grady, supra, merely indicated that contributory negligence would not be a bar to recovery from a defendant who was willful, *511 reckless or wanton. Nothing in Tabor or any other appellate decision requires retention of the "gross negligence" concept after the adoption of comparative negligence by the Legislature, since no legal differences flow from such a finding. Gross negligence, being only different in degree from ordinary negligence, should be considered as falling within the statutory language of N.J.S.A. 2A:15-5.1 et seq. Accord, Schwartz, Comparative Negligence, § 5.2 at 102 (1974); Laufenberg, Comparative Negligence Primer 12-13 (D.R.I. 1975). The percentages dictated by the statute can well encompass the old degrees of negligence, and the "gross" concept should now be abandoned.[5] As noted by the late Dean Prosser:
Although the idea of "degrees of negligence" has not been without its advocates, it has been condemned by most writers, and, except in bailment cases, rejected at common law by nearly all courts, as a distinction "vague and impracticable in its nature, unfounded in principle," which adds only difficulty and confusion to the already nebulous and uncertain standards which must be given to the jury. The prevailing view is that there are no "degrees" of care or negligence, as a matter of law; there are only different amounts of care as a matter of fact, and "gross" negligence is merely the same thing as ordinary negligence, "with the addition," as Baron Rolfe once put it, "of a vituperative epithet." This much-quoted phrase may be a bit unfair, since it is not difficult to understand that there are such things as major or minor departures from reasonable conduct; but the extreme difficulty of classification, because of the almost complete impossibility of drawing any satisfactory lines of demarcation, together with the unhappy history, fully justifies the rejection. [Prosser, The Law of Torts (4 ed. 1971), § 34 at 182]
Gross negligence had been defined in Wisconsin as follows:
To constitute gross negligence there must be either a willful intent to injure, or that reckless or wanton disregard of the rights and safety of another or his property, and that willingness to inflict *512 injury, which the law deems equivalent to an intent to injure * * *. [Twist v. Aetna Cas. § Sur. Co., 275 Wis. 174, 81 N.W. 2d 523 (Sup. Ct. 1957)]
Such a definition of gross negligence, when read in conjunction with the Bielski decision abolishing that concept under comparative negligence, shows that Wisconsin abolished what in New Jersey we have called not only "gross negligence," but also "willful, wanton and reckless" conduct.[6]
The question remains whether we in New Jersey should follow Bielski in its entirety and also abolish the "willful and wanton" distinction. Two courts have chosen to do so. Recently in Nga Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (Sup. Ct. 1975), California adopted a pure comparative negligence rule by judicial decision. The court noted in dictum that "a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of intentional." 13 Cal.3d at 826, 119 Cal. Rptr. at 873, 532 P.2d at 1241, citing Schwartz, op. cit. § 5.3. In his California Supplement (1975), Professor Schwartz notes (at 5) that California would probably now let the jury apportion damages even in cases with a willful and wanton defendant.
A federal court has also determined that comparative negligence rules would be applied under the Arkansas statute, regardless of proof of willful and wanton conduct. Billingsley v. Westrac Co., 365 F.2d 619 (8 Cir.1966). *513 This decision was, in effect, confirmed by the Arkansas legislature when in 1973 it amended its comparative negligence statute to include all "fault," rather than "negligence," and defined "fault" to include "willful and wanton" conduct. See Schwartz, op. cit. at 107.
Willful, wanton and reckless conduct, however, has been noted by our New Jersey courts (in Tabor and in Cohen v. Press, supra, and the cases cited therein), to differ in kind from negligence of any degree. See also, Banks v. Braman, 188 Mass. 367, 369, 74 N.E. 594, 595 (Sup. Jud. Ct. 1905), and Astin v. Chicago, Milw. & St. P. Ry. Co., supra, (Wisconsin prior to Bielski). In this respect we differ from Wisconsin (today), California and Arkansas.
In New Jersey we have in several recent cases recognized, and apparently elevated to the status of a separate tort, the claim of willful, wanton and reckless conduct. The court in McLaughlin v. Rova Farms Inc., 56 N.J. 288 (1970), recognized that there was no simple formula that could describe with exactness the difference between negligence and willful, and wanton misconduct.[7] See also Acken v. Campbell, 134 N.J. Super. 481, 492 (App. Div. 1974), aff'd 67 N.J. 585 (1975). The classic definition is noted in McLaughlin:
"* * * [I]t must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. * * *" [56 N.J. at 305]
Contrary to the opinion of the Billingsley court, supra, at least one commentator has stated that by the use of the word "negligence" in comparative negligence statutes, the *514 law with respect to "wanton" conduct is left as it was before the statute was enacted. "In cases involving `willful, wanton and reckless conduct' and intentional torts, the comparative negligence statute does not apply." Bouchard, "Apportionment of Damages Under Comparative Negligence," 55 Mass. L.Q. 125, 139 (1970).
This court concludes that the Legislature was apparently not considering willful and wanton conduct when it enacted N.J.S.A. 2A:15-5.1 et seq. That doctrine thus continues today in New Jersey, and a cause of action founded upon willful, wanton and reckless conduct should not be considered an action "to recover damages for negligence" as set forth in N.J.S.A. 2A:15-5.1. It is to such conduct that punitive damages may attach, with the aim of punishing the offender and precluding repetition of the act. Mazzilli v. Selger, 23 N.J. Super. 496, 504 (App. Div. 1952), aff'd in part and rev'd in part on the other grounds, 13 N.J. 296 (1953). Prosser, The Law of Torts (4 ed. 1971), § 2 at 9-10. Comparative negligence should not apply in such cases. Even Professor Schwartz, who endorses the Wisconsin rule in Bielski, notes that the courts will still be faced with the problem of distinguishing between negligent and reckless conduct in imposing punitive damages. Op. cit. § 5.3 at 108-109.
Defendant indicated at oral argument that he would seek to amend his answer to allege willful, wanton or reckless conduct on the part of plaintiff contributing to her being injured in the accident. The standards set forth in Tabor (61 N.J. Super. at 454) and McLaughlin (56 N.J. at 310-312), i.e., "contributory wantonness," would still obtain today. See also, Borelli v. Frollani, 98 N.J. Super. 203, 207 (App. Div. 1967). Considering the definition of wanton and reckless conduct quoted above and elaborated upon in McLaughlin, it is not unfair for a plaintiff who is also found guilty of such grievous conduct to be barred from recovery.
* * * In Tabor, the Appellate Division said that "contributory wantonness" would exist when the plaintiff had or should have *515 had knowledge of existing dangerous conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, with reckless indifference to the consequences, consciously and intentionally does some wrongful acts or omits some duty which contributed to his injury. [Citing authorities] [56 N.J. at 310-311]
Since the Legislature has established no "comparative wantonness" standard comparable to that which it expressed concerning negligence in N.J.S.A. 2A:15-5.1, the rule stated in McLaughlin remains in effect and should be applied.
Based upon the foregoing, this court will deny plaintiff's motion to add the allegation of "gross negligence," but will permit plaintiff to amend her complaint to allege willful and wanton conduct on the part of defendant.
Plaintiff has also moved for summary judgment based upon the amended pleading. Under Tabor v. O'Grady, supra, 61 N.J. at 552-553, this court will grant such motion insofar as it requests a partial summary judgment describing defendant's conduct as wanton and willful as a matter of law. This court, however, will permit defendant to file a responsive pleading concerning plaintiff's conduct and, if plaintiff's conduct is found upon trial to be willful, wanton and reckless, as well as a proximate cause of her injuries, such conduct will bar her claim. In this county negligence trials are bifurcated; therefore the question of liability shall be tried on the issue of "contributory wantonness" only, prior to any trial on damages.
NOTES
[1] The statutes read:

"2A:15-5.1 Contributory negligence; etc.
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering."
"2A:15-5.2 Comparative negligence; etc.
In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
a. The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages;
b. The extent, in the form of a percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all parties to a suit shall be 100%.
c. The judge shall mold the judgment from the finding of fact made by the trier of fact."
[2] Assuming "willful and wanton" (W) or negligent (N) plaintiffs or defendants, the resultant recovery would be either 100%, 0%, or comparative, depending upon which of the three systems is followed. (As noted later, the element of "gross" negligence adds nothing to the analysis):

 ----------------------------------------------
 | Tabor & | Modified | Wisconsin |
 | Comparative | Wis. Rule | Rule |
 -----------------------|-------------|-------------|------------------|
 | 1. Pltf (N); Def. (W) | 100% | 100% | Comparative |
 |-----------------------|-------------|-------------|------------------|
 | 2. Pltf (W); Def. (W) | Comparative | 0% | Comparative |
 |-----------------------|-------------|-------------|------------------|
 | 3. Pltf (N); Def. (N) | Comparative | Comparative | Comparative |
 |-----------------------|-------------|-------------|------------------|
 | 4. Pltf (W); Def. (N) | 0% | 0% | Comparative (0%) |
 ----------------------------------------------------------------------

[3] The problem with this analysis is that the Wisconsin court apparently ignored its own earlier decision in Astin v. Chicago, Milw. & St. P. Ry. Co., 143 Wis. 477, 128 N.W. 265 (1910), in which the court specifically determined that the two types of conduct were different in kind rather than degree. This oversight is of no real importance, however, except to note that in New Jersey we had a similar statement of "difference in kind" in Tabor v. O'Grady, 61 N.J. Super. at 454, and to show that this statement was not necessary to the court's holding in Bielski.
[4] There is still some confusion of terms, even in later cases. See infra at note 7.
[5] This result was heralded as far back as the 19th Century as a "modern trend." Dudley v. Camden & Phila. Ferry Co., 42 N.J.L. 25, 28 (Sup. Ct. 1879).
[6] As was noted by Wisconsin County Judge A.L. Twesme in his address to the New Jersey Judiciary at the 1973 Judges' Seminar:

"Much of what constituted gross negligence will be found to constitute a high percentage of ordinary negligence causing the harm and is amply taken care of in fixing the percentage of negligence in the comparison of negligence question of the special verdict. Gross negligence belongs in the field of intentional harm, not negligent injury." (Reprint of address, pp. 15-16; distributed by Administrative Office of the Courts). (But note that intentional torts are not covered by comparative negligence, even in Wisconsin.)
[7] But even in our later cases, terminology such as "`advanced degree' of negligent misconduct" has confused this separate type of conduct with negligence, as noted in McLaughlin, supra, 56 N.J. at 305, quoting from Krauth v. Israel Geller & Buckingham Homes Inc., 31 N.J. 270, 277 (1960).