458 A.2d 1377

**Mildred BRANCATO and Carmen Brancato, her husband, Appellants,**

**v.**

**KROGER COMPANY, INC.; the Stanley Works, a/k/a Stanley Magic Doors, a/k/a Stanley Company; Jed Products; S & E Associates.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1983.

Filed April 8, 1983.

Petition for Allowance of Appeal Denied July 8, 1983.

450

John Louis Vitsas, Pittsburgh, for appellants.

Theresa Homisak, Pittsburgh, for appellees.

Before POPOVICH, MONTGOMERY and VAN der VOORT, JJ.

POPOVICH, Judge:

This is an appeal from the judgment entered by a court en banc of the Court of Common Pleas of Allegheny County denying appellants', Mildred and Carmen Brancato's, Motion For A New Trial. We affirm.

The instant case arose on April 28, 1973 as the result of an injury sustained by appellant, Mildred Brancato, when she was struck in the back by the opening of an automatic door as she reached for trading stamp books situated near the entrance to Kroger's Supermarket in Glannon's Shopping Center, Allison Park, Pa. After a trial by jury, a verdict was entered finding both parties (Mildred Brancato and Kroger) negligent.[1]

On June 8, 1981, appellants' trial counsel filed a Motion For A New Trial, wherein he alleged that the verdict was

---

[1] A compulsory non-suit was granted by the trial court as to each of the additional defendants (The Stanley Works, JED Products and S & E Associates); none of whom is involved in the present appeal.

contrary to the evidence, against the weight of the evidence and contrary to the facts of the case. Additionally, counsel asserted that the trial court erred in denying his points for charge to the jury; in particular, counsel referred to Points # 1, # 3, # 6 and # 7. However, before the date set for the argument of post-trial motions, trial counsel for appellants filed a Petition To Withdraw As Counsel, which was granted. Thereafter, new post-trial counsel was secured by the appellants and, on April 2, 1982, an Amended Motion For A New Trial was submitted in which counsel alleged: "The verdict was tainted in that Juror Number 6 seated herself next to the Plaintiff, Mildred M. Brancato, during a court recess and twice inquired as to Plaintiff's physical condition, in response to all of which Plaintiff gestured with her hands and said, 'I cannot talk about it.'"

Following argument and consideration of briefs, the court en banc (per Judges Farino and Zappala) denied appellants' Motion For A New Trial by Order dated April 28, 1982. This appeal followed.

Appellants' counsel presents us with three issues to review; to-wit:

"I.  THE JURY VERDICT WAS TAINTED IN THAT ONE OF THE JURORS COMMUNICATED WITH THE PLAINTIFF, MILDRED BRANCATO, DURING THE COURSE OF THE TRIAL.

II.  THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY THAT, WHERE A LATENT DANGER EXISTS, IT IS NEGLIGENT FOR A POSSESSOR OF LAND TO INDUCE A FALSE SENSE OF SECURITY IN ANOTHER.

III.  THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT WHERE EYE-CATCHING GOODS ARE DISPLAYED IN A STORE THEN A PATRON MAY BE EXCUSED FROM NOT NOTING AN UNGUARDED HAZARD."

■ Before addressing the merits of appellants' contentions, we wish to respond to appellee's, Kroger's, counsel's protestation that none of the issues raised by the appellants should be addressed by this Court, "for the Brancatos failed to preserve or raise the issues at the time of trial." (Appellee's Brief at 9) In support of such an assertion, appellee's counsel cites us to *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 225, 322 A.2d 114 (1974) (holding that failure to make a timely, specific objection to an alleged trial error results in waiver of that issue for post-trial and appellate purposes) and that portion of the transcript which reveals that after the instructions were read to the jury, appellants' counsel only objected to the court's failure to read *a portion* of Point # 2 of his requested points for charge.[2]

To start with, our examination of the record reveals that appellants' trial counsel submitted 12 hand-written points for charge. Of these, Points # 1, # 3, # 6 and # 7 were specifically denied. (Record No. 54) However, as mentioned previously (*see supra* note 2), appellants' trial counsel took exception only to the court's refusal to read Point # 2 in its entirety after the jury had been instructed.

---

**2.** Counsel for appellants requested Point # 2 reads in toto:
> "2.) A possessor of land owes to a business visitor the duty of reasonable care for his protection and safety, that is, to keep the premises in a reasonably safe condition and if there be any defects or unsafe areas known or discoverable by the exercise of reasonable care and diligence, to warn business invitees of these dangers. *Miller v. Hickey,* 368 Pa. 317 at 324 [81 A.2d 910]."

To the left of the margin and in juxtaposition to Point # 2, the court had written "granted." However, at trial the court did not read Point # 2 in its entirety; as a result, the following exchange occurred after the jury had been instructed:
> "[THE COURT:] ... Do the attorneys wish to discuss anything with the Court before I send the jury out?
>
> *       *       *       *       *       *
>
> MR. DUERRING [Appellants' trial counsel]: Your Honor, I believe you will find Point 2 here as to the second aspect of it that if there are any defects or unsafe areas that the defendant or defendants could have conceivably known about, that they would have a duty to at least warn the customers that they existed.
> THE COURT: I'll overrule that." (RR. 28 & 30)

We need not discuss the propriety of the court's ruling on this point, for it is not raised on appeal.

Nonetheless, counsel for appellants did assail the propriety of such a ruling, i.e., the court's denial of the requested Points # 1, # 3, # 6 and # 7, in post-trial motions. (Record No. 56)  Furthermore, as is relevant to the discussion here, we note that appellate counsel's arguments numbered II & III, set forth *supra,* place in issue the correctness of the trial court's denial of appellants' Points # 1 and # 6, respectively, of the points for charge.

In making a ruling on the question of waiver regarding the two specific points for charge, we look for guidance to *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977).  In *Broxie,* the Court, in discussing the consequences of appellant's failure to object to the trial court's charge, stated:

"It has long been the law in this Commonwealth that *in order to preserve for appellate review an issue concerning the correctness of a trial court's charge to the jury, the complaining party must submit a specific point for charge* or make a timely, specific objection to the charge as given.  E.g., *Lobalzo v. Varoli,* 422 Pa. 5, 220 A.2d 634 (1966); *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960).  See also *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969).  The only exception to this general rule was where a trial court's charge involved basic and fundamental error, but this exception was formally abrogated in *Dilliplaine v. Lehigh Valley Trust Co.,* [*supra*].  See also *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974)."  (Emphasis added)  *Id.,* 472 Pa. at 377, 372 A.2d at 743.  *Accord Atherholt v. Interstate Energy Co.,* 35 Pa.Cmwlth. 289, 386 A.2d 167 (1978); *but see Commonwealth v. Rineer,* 310 Pa.Super. 241, 456 A.2d 591 (1983).

Consistent with the preceding, we note that Pa.R.Civ.P. 227(a) reads:

"(a) It shall not be necessary on the trial of any action or proceeding to take exception to any ruling of the trial judge.  An exception in favor of the party against whom the adverse ruling was made shall be deemed to have

been taken with the same force and effect as if it had been requested, noted by the official stenographer and thereafter written out, signed and sealed by the trial judge."

In light of the aforesaid, we find no merit to appellee's counsel's contention that "[n]one of the issues raised by the Brancatos should be addressed by this Court for the Brancatos failed to preserve or raise the issues at the time of trial." (Appellee's Brief at 9) Contrary to appellee's counsel's recounting of what transpired below, we find that appellants' trial counsel submitted 12 points for charge, 4 of which (numbered 1, 3, 6 and 7) were denied by the trial court. Thus, we hold that the Brancatos "in fact had a specific exception on th[ese 4] point[s] for charge ...." *Atherholt v. Interstate Energy Co., supra,* 35 Pa.Cmwlth. at 292, 386 A.2d at 169; *see also Broxie v. Household Finance Co., supra.* This, in turn, results in the preservation of appellants' arguments numbered II & III, which specifically deal with the trial court's denial of Points # 1 and # 6, respectively, for our review.

■ Turning to the issues at hand, we see that appellants' argument number II alleges that the trial judge should have instructed the jury (on their requested Point # 1) "that, where a latent danger exists, it is negligent for a possessor of land to induce in its business visitors a false sense ... of security." (Appellants' Brief at 10) In other words, appellants' assert that Kroger's placement of the trading stamp books so near to the automatic door "had created a latently dangerous situation" so as to entitle them to the requested point for charge. We disagree.

To gain entrance to Kroger's, one would have to go through two doors, both of which automatically opened inward and to the right when a person stepped on the sensitized mats that activated the hydraulically operated doors. The distance between the first outer door and the second inner door was approximately five feet. When one passed through the second door, there was a four-foot long railing to the right that stood about "hip" high. Also, there

was a space of about five feet between the railing and the front store windows. In this area, Kroger's had placed a cart containing trading stamp books. It was at this spot, between the railing and the second door, that Mrs. Brancato was standing when she leaned over to take some trading stamp books and was struck in the buttock by the door, which was activated by a patron coming into the store. From our review of the facts, we find no reason to disturb the trial court's determination that: "The only evidence introduced was to the effect that this was a normal supermarket automatic entry doorway, and there was no evidence introduced either that a latent danger existed or that this was an unguarded hazard." (Lower Court Opinion at 2) Thus, appellants were not entitled to an instruction (Point # 1) applicable to no facts in the case. *See Auerbach v. Philadelphia Transportation Co.*, 421 Pa. 594, 221 A.2d 163 (1966).

■ Appellants' argument number III, regarding the claim that they were entitled to a charge that the eye-catching goods (trading stamp books) on display excused Mrs. Brancato from not noting an unguarded hazard, is no more persuasive than the previous one. Since we have concluded that the evidence did not establish the existence of a "hazard," it would be incongruous to hold that appellants should have been granted the requested point for charge. *See Auerbach v. Philadelphia Transportation Co., supra.* As counsel for the appellee's notes in his brief to this Court, the instant case is more akin to *Bream v. Berger*, 388 Pa. 433, 130 A.2d 708 (1956), where our Supreme Court found contributory negligence as a matter of law in an eye-catching display case. In *Bream*, the plaintiff had to step up onto the doorstep to enter the defendant's store. When the plaintiff reached for the screen door, she stepped back two steps, to allow for the sweeping arc of the screen door; on her second step backward she landed on the pavement. The Court, in recounting the facts, stated that the plaintiff did not recall where she was looking when she stepped back onto the pavement, but she thought that she was looking at

the signs in the window. The Court, in ruling against the plaintiff, recited language that is most appropriate instantly; *viz.*:

" ' "No person is required to take extraordinary precautions to save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness. * * * 'Everyone has a right to proceed upon the assumption that those to whom he owes a duty of care are normal in every respect and prepared on their part to exercise the care of prudent persons generally' ". *Jefferson v. Y.M.C.A.*, 354 Pa. 563, 567, 47 A.2d 653, 655.

\*　　\*　　\*　　\*　　\*　　\*

' "What this court stated in *Bailey v. Alexander Realty Co.*, 342 Pa. 362, 20 A.2d 754, 756, applies to the instant case: * * * When an individual can assure his own safety by the use of his senses, he must do so or abide the consequences of his carelessness. * * * The duty of availing oneself of one's senses, for self-protection can seldom be breached with physica[l] impunity and never with legal sanction. * * * '

' "A person may not recover for injuries which are received as a result of a failure on his part to observe and avoid an obvious condition which ordinary care for his own safety would have disclosed": *Boock v. Acme Markets Inc.*, 347 Pa. 501, 503, 32 A.2d 759, 760; *Rogers v. Max Azen, Inc.*, 340 Pa. 328, 16 A.2d 529.'

The well established rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery.

This is not the case of a hidden danger, or of a danger that was obscured by another pedestrian, or by a worn or slippery or defective doorstep; this regrettable accident was caused by plaintiff's thoughtlessness, carelessness or inattention." *Id.*, 388 Pa. at 436, 130 A.2d at 709–710.

In the case at bar, Mrs. Brancato was not unaware of the fact that her stance, in between the railing and the second

door, would subject her to contact with the door if she remained there while patrons entered the store. In other words, she failed to observe and avoid an obvious condition which ordinary care for her own safety would have disclosed. This conclusion renders the present case distinguishable from the one proffered by the appellants in support of their assertion of trial error, i.e., *Hallbauer v. Zarfoss*, 191 Pa.Super. 171, 156 A.2d 542 (1959). In *Hallbauer*, the wife-plaintiff sustained injuries when she fell down a flight of stairs in the rear of defendants' hardware store as she was in the process of examining a brush display rack. The Court, in finding that the trial judge did not err in refusing defendants' motion for judgment n.o.v., gave a physical description of the area surrounding the basement door that makes it factually different from the case at bar; e.g.:

"At the main floor level the stairway [leading to the basement] is bound on the north by the north wall, on the east by tables, shelving displays, and a drinking fountain, and on the south by the mop, broom, and brush display rack. Because of the location and surroundings, the stairs are not generally visible from the front of the store or the side but only from a position almost directly in front of the entrance to the stairway. The brush display runs along one side of the stair well opening, thereby concealing the entrance of the stairway from the view of anyone approaching in the manner of the wife-plaintiff. The stairs rise sharply and lead to the basement which is used only for storage purposes. The basement was not lighted; there were no signs or warnings indicating the presence of the stairway, and there was no barrier across the top of the stairway. Although she had been in the store numerous times, wife-plaintiff was not aware of the existence of the stairway." 191 Pa.Super. at 174–75, 156 A.2d at 543–544.

Instantly, unlike in *Hallbauer*, wife-appellant was cognizant that her position in the supermarket (behind the second incoming door) rendered her vulnerable to sustaining injury

if she remained there while customers entered the store. The area she was in was lighted, not stacked with merchandise and protected by a railing, which could have been circumvented to reach the trading stamp books. Therefore, we find, as characterized by the Court in *Bream*, "this regrettable accident was caused by plaintiff's thoughtlessness, carelessness or inattention." *Id.*, 388 Pa. at 436, 130 A.2d at 710. As a result, we conclude that the point for charge (Point # 6) sought by the appellants was not appropriate to the facts here, *see Auerbach v. Philadelphia Transportation Co., supra;* accordingly, no error was committed by the trial court's action.

■ Lastly, appellants' aver that the verdict was tainted by juror # 6 purportedly inquiring, during a recess, as to wife-appellant's physical condition. The wife-appellant allegedly gestured with her hands and said, "I cannot talk about it."

The court en banc, after initially noting that such an accounting rendered the incident harmless to appellants' case, then stated that appellants' failure to call the exchange to the court's attention before the trial concluded, resulted in it "no longer [being] a matter of inquiry." (Lower Court Opinion at 2) We agree, in part, with the court en banc.

First, we deal with the question of whether inquiry into the propriety of the alleged communication between a juror and Mrs. Brancato was preserved for post-trial and appellate review. The court en banc (with Zappala, J., concurring in the result) and appellee's counsel opine that such an issue was not properly preserved for review. We think otherwise.

As recounted earlier in this Opinion, appellant's trial counsel filed post-trial motions, but prior to the hearing scheduled to argue them, he submitted a Petition For Withdrawal As Counsel. The granting of this Petition necessitated the rescheduling of the argument to hear post-trial motions so as to afford appellants the opportunity to secure

new counsel. When this was accomplished, new post-trial counsel filed an Amended Motion For A New Trial and a brief in support of his assertions, one of which dealt precisely with the discussion supposedly had by juror # 6 and Mrs. Brancato. After the denial of post-trial motions, the issue was again raised by appellants in their brief to this Court.

Given the rather fortuitous withdrawal of trial counsel before the litigation had come to a close—at least at the post-trial level—we hold that new counsel's submission of an amended motion raising the issue now before this Court was sufficient to preserve it below and on appeal for our review. *See Pittsburgh National Bank v. Mutual Life Insurance Company of New York*, 273 Pa.Super. 592, 417 A.2d 1206 (1980), aff'd 493 Pa. 96, 425 A.2d 383 (1981). Now, having disposed of the procedural entanglement engendered by this case, we turn to the merits of the issue.

■ In *Printed Terry Finishing Co. v. City of Lebanon*, 247 Pa.Super. 277, 372 A.2d 460 (1977) this Court had occasion to discuss what matters would be scrutinized by the judiciary in deciding if a verdict was to be reversed because of some contact between a juror and any other individual during the course of a trial. We stated:

"If, however, contact between an officer of the court and a juror should occur, 'it is not required that [the parties] be curt or lacking in the customary amenities of social intercourse....' *Pessin v. Keeneland Association*, 298 F.Supp. 593, 599 (E.D.Ky.1969). Such contacts, however, must not be of such a nature as to cast suspicion upon the integrity of the jury verdict. Thus, the Supreme Court of the United States, in *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), pronounced that:

'Private communications, possibly prejudicial between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.' *Id.* at 150, 13 S.Ct. at 53.

We therefore agree with the statement of the court in *California Fruit Exchange v. Henry*, 89 F.Supp. 580, 588–89 (W.D.Pa.1950), that:

> 'The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury impaneled to try it; and if such communication is had and it appears that a conversation was had about the suit, or *the communication is not explained satisfactorily*, it will, in itself, be ground for a new trial. If, when explained, however, it can be seen in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reasons that said comment could not have been prejudicial.' " (Emphasis in original) *Id.*, 247 Pa. at 298–99, 372 A.2d at 471.

Based on the preceding, we are not in accord with appellants' counsel's assertion that "[w]hat we have here is an issue that would per se have required reversal if previous counsel had timely brought it to the attention of the trial court." (Appellants' Brief at 8)

Albeit the trial court should have had its attention called to the occurrence, we do not find, in light of the facts at bar, that the alleged response ("I cannot talk about it") by Mrs. Brancato to a juror's inquiry as to her physical condition is so infested with prejudice that the law clearly demands that a new trial be granted. Rather, we observe that wife-appellant offers no proof of prejudice other than the mere happening of the incident, and a review of the record does not disclose that an impression was made on the minds of the jury, if any, which was not overcome by the trial judge's instructions as to the law the jury was to apply in making its determination. *See Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A.2d 816 (1953); *Printed Terry Finishing Co. v. City of Lebanon, supra.*

Judgment affirmed.