515 A.2d 933

John C. KRIVIJANSKI, Administrator of the Estate of Michael E. Krivijanski, Deceased, Appellant

v.

UNION RAILROAD COMPANY, a Corporation.

Edward H. NASSAN, Administrator of the Estate of Jeffrey A. Nassan, Deceased, Appellant

v.

UNION RAILROAD COMPANY, a Corporation.

John C. KRIVIJANSKI, Administrator of the Estate of Michael E. Krivijanski, Deceased

v.

UNION RAILROAD COMPANY, a Corporation, Appellant.

Edward H. NASSAN, Administrator of the Estate of Jeffrey A. Nassan, Deceased,

v.

UNION RAILROAD COMPANY, a Corporation, Appellant.

Superior Court of Pennsylvania.

Argued April 17, 1986.

Filed Sept. 26, 1986.

Robin S. Wertkin, Pittsburgh, for appellants in Nos. 989 and 990 and appellees in Nos. 996 and 997.

Gerald C. Paris, Pittsburgh, for appellants in Nos. 996 and 997 and appellees in Nos. 989 and 990.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

TAMILIA, Judge:

These appeals and cross appeals involve two actions which were consolidated for trial. The executors for the respective estates of Michael Krivijanski and Jeffrey Nassan sought damages from the Union Railroad Company under the Pennsylvania Wrongful Death and Survival Acts. (42 Pa.C.S.A. §§ 8301, 8302)

The decedents were involved in a fatal accident while riding motorcycles on a private unpaved road owned by the Union Railroad Company. There were no witnesses to the incident and the cause was disputed at trial. The plaintiffs contended the decedents collided with an unmarked wire cable which the railroad maintained across the road. The railroad disputed this theory and offered alternative explanations for the accident.

Special interrogatories were separately answered by the jury concerning each plaintiff. The responses were indicative of a jury determination that the actions of the railroad constituted willful or wanton misconduct and those of each decedent negligence.

In both instances the jury attributed 60 per cent of the accident to the railroad's conduct and 40 per cent to the decedent with the total damages to the estate and parents

of each decedent set at $25,000. The court then applied the comparative negligence law (42 Pa.C.S.A. § 7102)[1] and molded the verdict to reflect the fault of the parties. After adding delay damages, the court awarded $19,375.00 to each of the plaintiffs.

Appeals and cross appeals filed in each of the actions are presently before us. The appellants/plaintiffs argue the lower court erred in (1) refusing to grant a new trial on the issue of damages because the verdicts were patently inadequate; (2) instructing the jury that the measure of damages in the survival act claim was "accumulations" and (3) refusing to give further clarifying instructions concerning how the jury should compute "total damages". The appellants/plaintiffs also contend the court erred in submitting the issue of the negligence of the decedents to the jury thus invoking the application of comparative negligence.

The cross appellant/railroad asserts trial court error in admitting into evidence the testimony of a police officer concerning a statement made by Jeffrey Nassan and in refusing to grant a mistrial due to the conduct of a plaintiff's witness who had contact with the jury.

 Initially, in reviewing the issues raised concerning the amount of damages awarded we find no merit to the

---

1. § 7102. Comparative negligence

(a) General rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) Recovery against joint defendant; contribution—Where recovery is allowed against more than one defendant, each defendant shall be liable for the proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

arguments put forth. Whether to grant a new trial because of the alleged inadequacy of a verdict is a matter within the discretion of the trial court and will be sustained absent an abuse of that discretion. *Stokan v. Turnbull,* 480 Pa. 71, 389 A.2d 90 (1978); *Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355 (1983). The court reviewed the evidence presented concerning the earnings potential of the parties and found no basis to disturb the jury's findings. We can find no abuse of discretion in this holding and thus affirm the trial court's action.

In examining the jury charge as a whole, we find the court properly instructed the jury on damages in general and specifically as to lost earnings. Appellant's claims are thus devoid of merit. *Kearns v. Clark,* 343 Pa.Super. 30, 493 A.2d 1358 (1985); *McCay v. Philadelphia Electric Co.,* 447 Pa. 490, 291 A.2d 759 (1972).

■ We likewise find no merit in cross-appellant's claims of trial court error. We believe the statement made by Jeffrey Nassan to the police officer was properly admitted as part of the res gestae exception to the hearsay rule. The police officer spoke with Jeffrey Nassan at the hospital approximately two hours after the accident. The officer recounted how when he asked Jeffrey "what happened?" he replied "I hit the cable." (N.T. 5/4/84, Vol. I, p. 287) In light of the total circumstances surrounding the statement, particularly the serious nature of the injuries and the physical condition of Jeffrey Nassan at the time, we find it was properly admitted. There was little possibility of this being a self-serving remark based on reflective thought. *See Cody v. S.K.F.,* 447 Pa. 558, 291 A.2d 772 (1972); *Thompson v. City of Philadelphia,* 222 Pa.Super. 417, 294 A.2d 826 (1972); *Commonwealth v. Blackwell,* 343 Pa.Super. 201, 494 A.2d 426 (1985).

■ We also find the court acted properly in refusing to grant a mistrial when it was discovered that a potential witness had made comments to some of the jurors at a restaurant and later in the court room.

The court questioned the potential witness and certain members of the jury in chambers (N.T. 5/3/84, Vol. I, pp. 194–224) and ascertained that nothing was said about the case nor was there any indication that the party was trying to influence the jurors. In addition a cautionary instruction was given. Under these circumstances, a mistrial was properly denied. *Printed Terry Finishing v. City of Lebanon,* 247 Pa.Super. 277, 372 A.2d 460 (1977); *Brancato v. Kroger Co., Inc.,* 312 Pa.Super. 448, 458 A.2d 1377 (1983).

The single issue on which we do not agree with the lower court is the applicability of the Comparative Negligence Law (42 Pa.C.S.A. § 7102, see footnote 1).

█ It is clear that the duty owed to a trespasser by a property owner is to refrain from willful or wanton misconduct. *Antonace v. Ferri Contracting Co., Inc.,* 320 Pa.Super. 519, 467 A.2d 833 (1983); *Engel v. Friends Hospital,* 439 Pa. 559, 266 A.2d 685 (1970); *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965).

The jury was asked in a special interrogatory to determine whether the conduct of the railroad constituted willful or wanton misconduct and they determined that it did. The question then becomes whether this willful or wanton conduct is a form of negligence under the comparative negligence statute or whether it is a distinct form of conduct to which comparative negligence is inapplicable.

This issue although mentioned in other cases before this Court has never been specifically decided. *See Emerick v. Carson,* 325 Pa.Super. 308, 472 A.2d 1133 (1984); *Stubbs v. Frazier,* 308 Pa.Super. 257, 454 A.2d 119 (1982); *Antonace, supra.*

Courts of other states have been divided in resolving this issue. *See Stubbs, supra,* 308 Pa.Superior Ct. at 262, 454 A.2d at 121; 10 A.L.R. 4th 946, 948; 78 A.L.R.3d 339, 389. Those holding that comparative negligence applies even when willful or wanton misconduct is involved have at times relied on the theory that this type of conduct is a form of

negligence and a comprehensive statute requires inclusion. They also note that the concepts of willful and wanton conduct were brought into the law to ameliorate the harsh effects of contributory negligence. Once comparative negligence was enacted this basis for differentiating these types of conduct was no longer considered necessary. Courts have also looked with disfavor on the all or nothing approach, preferring to compare the fault of the parties. *See Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962); *Amoco Pipeline Co. v. Montgomery,* 487 F.Supp. 1268 (1980), (construing Oklahoma law); *Sorenson v. Allred,* 112 Cal.App.3d 717, 169 Cal.Rptr. 441 (1980).

Other courts have examined prior rulings within the state wherein a distinction was not drawn between willful and wanton conduct, instead the terms were related to negligence. Based on this lack of distinction the practice was carried over to the comparative negligence area. *Billingsley v. Westrac Company,* 365 F.2d 619 (1966) (applying Arkansas law) (Arkansas later passed a comparative negligence law specifically including willful and wanton conduct).

Courts which have not applied comparative negligence statutes when willful or wanton conduct is involved have held such conduct to be distinct from negligence. In discussing the basis for originally providing an exception to the contributory negligence rule when willful or wanton conduct was involved an additional reason is set forth. The first as stated previously was to ameliorate the harshness of the rule prohibiting recovery when the plaintiff was also negligent. The second reason is that the willful or wanton conduct is deemed to be so close to intentional wrongdoing that the perpetrator should not have the benefit of contributory or comparative negligence being applied. *See Draney v. Bachman,* 138 N.J.Super. 503, 351 A.2d 409 (1976); *Danculovich v. Brown,* 593 P.2d 187 (1979) (Wyoming Supreme Court); *Davies v. Butler,* 95 Nev. 763, 602 P.2d 605 (1979). *See also V. Schwartz, Comparative Negligence,* (1974).

Legislative intent has also been discussed and the failure of the legislature to include willful and wanton conduct within the statute has been viewed as indicating a desire to exclude it when gross negligence was specifically included. *Davies, supra.*

After considering the various arguments set forth, we hold that when willful or wanton misconduct is involved, comparative negligence should not be applied.[2] Our primary reason for so holding is the longstanding distinction Pennsylvania courts have made between willful or wanton conduct and negligent conduct.

Wanton conduct has been defined as "something different from negligence, however gross, different not merely in degree but in kind and evincing a different state of mind on the part of the tort feasor". *Kasanovich v. George,* 348 Pa. 199, 203, 34 A.2d 523, 525 (1943); *Zawacki v. Pennsylvania Railroad Company,* 374 Pa. 89, 97 A.2d 63 (1953); *Geelen v. Pennsylvania Railroad Company,* 400 Pa. 240, 161 A.2d 595 (1960); *Stubbs v. Frazier, supra.* "Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." *Kasanovich, supra,* 348 Pa. at 203, 34 A.2d at 525. Wanton misconduct

... means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable

2. We have continued to hold this distinction as recently as *Pachesky v. Getz,* 353 Pa.Super. 505, 510 A.2d 776 (1986), where we held that in applying the Rescue Doctrine, so long as the rescuer acts in a reasonable manner, despite some negligence, full recovery is permissible. Willful or wanton negligence by the rescuer would trigger the comparative negligence application.

Conversely, where the *defendant's* negligence is wanton and willful, as here, and the plaintiff's negligence is simple or ordinary, comparative negligence principles may not be applied.

that harm would follow. It usually is accompanied by a conscious indifference to the consequences.

Prosser, Torts § 33 at 151 (2d ed. 1955) cited in *Evans, supra,* 418 Pa. at 567, 212 A.2d at 443; *Moss v. Reading Company,* 418 Pa. 598, 212 A.2d 226 (1965). *Antonace, supra.* See also 57 Am.Jur.2d § 102.

The Restatement (Second of Torts) § 500 provides:

**§ 500. Reckless Disregard of Safety Defined**

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

In a special note to this section it states:

**Special Note:** The conduct described in this Section is often called "wanton or willful misconduct" both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.

Comment g of Section 500 provides:

**g. Negligence and recklessness contrasted.** Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his

conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

Section 500 of the Restatement (Second) of Torts has been cited with approval by Pennsylvania courts in discussing wanton misconduct. *See Turek v. Pennsylvania R. Co.*, 369 Pa. 341, 85 A.2d 845 (1952); *Evans, supra; Junk v. East End Fire Department*, 262 Pa.Super. 473, 396 A.2d 1269 (1978); *Stubbs, supra. See also* 57 Am.Jur.2d § 102.

With this longstanding practice of Pennsylvania courts defining willful and wanton conduct as different in kind from negligence, we think it proper to continue the distinction in construing the comparative negligence statute.

Words used in legislation are to be accorded their common meaning and usage. *Brinkley v. Pealer*, 341 Pa.Super. 432, 491 A.2d 894 (1985). "Statutes are not presumed to make changes in rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." *Harka v. Nabati*, 337 Pa.Super. 617, 624, 487 A.2d 432, 435 (1985) citing. *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976).

The legislature could, if it so desired, have specifically included forms of conduct not considered to be negligence by our courts in the statute. Negligence describes a specific form of conduct and absent a clear directive from the legislature we do not think it appropriate to expand the scope of the legislation to include conduct which is under our definition not negligent conduct.

One of the roots of the problem of separating the types of conduct involved in this case is the inexactness of courts when discussing forms of conduct. Terms such as "wanton negligence" have been employed thus equating wanton conduct with a degree of negligence. *See Frederick v. Philadelphia Rapid Transit Company*, 337 Pa. 136, 10

A.2d 576 (1940); *Evans, supra,* (Musmanno, J. Dissenting Opinion); *Emerick, supra.* This inexactness was specifically recognized in *Kasanovich, supra* where the court noted the use of the term "wanton negligence" and stated "a better term would be "wanton misconduct", 348 Pa. at 199, 34 A.2d at 525.

Negligence in the legal sense is a word of art and "although inadvertent conduct characterized as willful, wanton or reckless, is said to come within the term 'negligence' when used in its broadest sense ... (it) is not, properly speaking, within the meaning of 'negligence', however gross, when 'negligence' is used as a term of art." 57 Am.Jur.2d § 103.

Considering the use of the word negligence in the statute as a word of art and further applying the definition given to willful and wanton misconduct by our courts, we think construing the language to include willful and wanton misconduct would be improper.

In further support of this decision, we note our agreement with those courts who have found in the nature of willful and wanton misconduct a basis for denying the benefits of comparative negligence. In such situations when viewing the conduct of the parties, the willful or wanton misconduct has been found to outweigh any negligence by the other party. *Draney, supra*; *Davies,* supra. Comparative negligence attempts to balance two equal forms of conduct and in so doing allocate the cost in terms of whose action was most responsible for the injury. To involve a comparison of unequal forms of conduct would not fit within this scheme.

The trial court in determining comparative negligence should apply relied upon this court's actions in *Antonace, supra* where we reversed the lower court for submitting a case involving a trespasser to the jury on a negligence theory. The lower court viewed the failure of this court to comment on the submission of possible comparative negligence to the jury as condoning this action. We do not agree, for in our view the court in *Antonace* was setting

forth examples of how the lower court treated the case as one involving negligence. After reviewing the lower court's actions this Court found them to be improper because willful or wanton misconduct was involved and thus negligence was not at issue.

Our decision that comparative negligence is not applicable does not require a new trial to be granted on the issue of liability or damages.

■ The finding of the jury that the railroad's conduct constituted willful or wanton misconduct was sufficient to impose liability whether or not comparative negligence is involved and need not be disturbed. Likewise, the amount of damages awarded was determined independently of the comparative negligence issue and need only be modified to eliminate the reduction made to reflect comparative negligence.

The jury dealt specifically with comparative negligence in responding to a special interrogatory and placing a percentage of responsibility on the parties. The jury as noted prior was properly instructed on the manner in which to compute the damages and was specifically instructed to find the total damages without applying percentages and without regard to who was responsible (N.T. 5/15/84, Vol. III, p. 1218).

At 989 Pittsburgh, 1985; John C. Krivijanski, Administrator of the Estate of Michael E. Krivijanski, Deceased, Appellant v. Union Railroad Company, A Corporation, plaintiff/appellant's request for a new trial limited to damages is denied; the judgment entered on the molded verdict of the jury is vacated and the initial finding of the jury in the amount of $25,000 is hereby instated. Delay damages of $11,041.66 are added to the amount of $25,000 for a total award of $36,041.66.[3]

---

**3.** Computation of delay damages pursuant to Pa.R.C.P. 238.

```
Total damages = $25,000.00
 at 10% per year, $2,500 × 4 years = $10,000.00
 $208.33 per month × 5 months = $ 1,041.66
 Total delay damages = $11,041.66
 Total award = $36,041.66
```

At 990 Pittsburgh, 1985; Edward H. Nassan, Administrator of the Estate of Jeffrey A. Nassan, Deceased, Appellant v. Union Railroad Company, A Corporation, plaintiff/appellant's request for a new trial limited to damages is denied; the judgment entered on the molded verdict of the jury is vacated and the initial finding of the jury in the amount of $25,000 is hereby instated. Delay damages of $11,041.66 are added to the amount of $25,000 for a total award of $36,041.66.

At 996 Pittsburgh, 1985; John C. Krivijanski, Administrator of the Estate of Michael E. Krivijanski, Deceased v. Union Railroad Company, A Corporation, Appellant, and at 997 Pittsburgh, 1985; Edward H. Nassan, Administrator of Jeffrey A. Nassan, Deceased v. Union Railroad Company, A Corporation, Appellant, defendant/appellant's cross-appeals are dismissed.

MONTGOMERY, Judge, dissenting:

I must respectfully dissent. I strongly disagree with the conclusion of the Majority that the lower court erred in applying the doctrine of comparative negligence in the circumstances of this case. I would adopt the discussion and conclusions on that issue set forth in the lower court Opinion. Further, I would rely upon the decisions from other jurisdictions, cited in that Opinion and noted in the Majority Opinion, which would allow the trier of fact to consider the possible negligence of the Plaintiffs as a factor diminishing damages, by applying the doctrine of comparative negligence in such cases. I would not disturb the verdicts of the lower court in these cases.