J. A15003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REGINA SMITH AND JANIE SMITH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | No. 469 EDA 2015 |
| | : | |
| THOMAS GEE | : | |

Appeal from the Judgment Entered March 20, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. October Term, 2012 No. 3638

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 17, 2016**

Janie Smith ("Smith"), plaintiff in the court below, appeals from the judgment entered March 20, 2015, in this motor vehicle accident case. Smith was a passenger in the vehicle driven by her daughter, Regina Smith ("Regina").  Smith was rear-ended by defendant/appellee, Thomas Gee ("Gee"), and liability was stipulated.  Following a jury trial, the jury found that Smith sustained a serious impairment of bodily function (Regina had elected the limited tort option), but awarded damages of only $500 for pain and suffering.  Medical expenses were stipulated.  Post-trial motions were denied, and this timely appeal followed.  After careful review, we affirm.

The trial court has aptly summarized the history of this matter as follows:

Plaintiffs, Regina Smith, Angela Smith, and Janie Smith filed a complaint in this motor vehicle, limited tort matter on October 25, 2012 against Thomas Gee in the Court of Common Pleas in Philadelphia County, First Judicial District of Pennsylvania. On January 28, 2014 the parties went to arbitration, where the arbitrators found in favor of all three Plaintiffs and against [Gee]. [Gee] then filed an appeal for a trial de novo, and requested 12 jurors.

A Jury Trial was held on September 10, 2014 and September 11, 2014. The parties stipulated that Janie Smith had recoverable medical expenses of $2,565.22 and Regina Smith had recoverable medical expenses of $1,315. Plaintiff Angela Smith was released from this action prior to trial. [Gee] did not contest liability [for] the accident itself, therefore, the sole issues before the jury was [sic] whether the Plaintiffs suffered serious impairment of a bodily function, and whether [Gee] was liable for any serious impairment of a bodily function.[Footnote 1]

> [Footnote 1] In a limited tort insurance case, Plaintiff can only recover non-economic damages if it is shown she suffered a "serious impairment of a bodily function[.]" Long v. Mejia, 896 A.2d 596 (Pa.Super[.] 2006).

Regina Smith was operating the vehicle, with Janie Smith in the front passenger seat. Janie testified that the car came to a stop at a yield sign, when they were hit from the rear. Janie claimed injury from hitting her left knee on the dashboard and her head on the back of the headrest, as well as lower back pain. Both Plaintiffs were transported to Presbyterian Hospital via ambulance.

Defendant, Thomas Gee testified that he was stopped approximately 10 feet behind Plaintiffs at the yield sign. Gee testified he then hit the accelerator, and his car was traveling at less than

5 miles per hour when it collided with the Plaintiffs' car. He testified that his airbags did not deploy, and that the Plaintiffs' car was not pushed forward at all.

At the direction of her Lawyer, Janie Smith visited Dr. [Maurice] Singer. Prior to the accident, Janie Smith had a knee replacement surgery on her left knee. After the accident, a Doctor told Janie Smith that her knee had been "knocked out of place" and recommended another surgery.

A year after the accident, Janie Smith had the surgery on her left knee. She rehabbed in the hospital for 3 weeks before leaving. Although the surgery improved her condition, Janie Smith testified that her knee felt weak, and would sometimes buckle.

Janie Smith testified that she used a walker due to the pain in her back, and had muscle spasms in her neck. She could not walk around the house without something to lean or hold on to. The pain in her neck, back and knee were the same.

On September 12, 2014 the Jury entered a verdict in favor of both Plaintiffs. Plaintiff, Regina Smith was awarded $1,315.00 in economic damages. Plaintiff, Janie Smith was awarded $2,676.22 in economic damages, and an additional $500.00 for serious impairment of a bodily function.[Footnote 2]

[Footnote 2] The Jury Verdict Slip, read as follows: "state the amount of non-economic damages, *if any*, sustained by the plaintiff, Janie Smith, *as a result of the accident* (emphasis added).

On September 19, 2014, Plaintiff Janie Smith filed a Post-Trial Motion requesting her non-economic damages be modified by additur, a new trial be held on the issue of damages only, or alternatively a Judgment Notwithstanding the Verdict be entered.

> The Court denied Plaintiff's Post-Trial Motion on January 8, 2015. Plaintiff Janie Smith then filed this appeal on February 6, 2015.

Trial court opinion, 11/12/15 at 1-3 (citations to the transcript omitted). Judgment was entered on March 20, 2015. On April 29, 2015, Smith was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and she timely complied on May 7, 2015. On November 12, 2015, the trial court filed a Rule 1925(a) opinion.

Smith has raised the following issue for this court's review: "Whether, in a limited tort case, a $500.00 award for non-economic damages is inadequate compensation as a matter of law, where the jury found that the plaintiff sustained a 'serious impairment of bodily function?'" (Smith's brief at 3.)

> It is well settled that the grant of a new trial is a matter within the discretion of the trial court. ***Burrell v. Philadelphia Elec. Co.***, 438 Pa. 286, 288, 265 A.2d 516, 517 (1970); ***Krivijanski v. Union Ry. Co.***, 357 Pa.Super. 196, 199, 515 A.2d 933, 935 (1986). However, that discretion is not absolute, and this Court will reverse the lower court if it has abused its discretion. ***Burrell***, 438 Pa. at 288, 265 A.2d at 517 (citing ***Austin v. Ridge***, 435 Pa. 1, 4, 255 A.2d 123, 124 (1969)).

***Kiser v. Schulte***, 648 A.2d 1, 3-4 (Pa. 1994).

> A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to

> the loss suffered by the plaintiff. ***Elza v. Chovan***, 396 Pa. 112, 114, 152 A.2d 238, 240 (1959); ***Slaseman v. Meyers***, 309 Pa.Super. 537, 541, 455 A.2d 1213, 1215 (1983). Where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded. ***Burrell***, 438 Pa. at 289, 265 A.2d at 518; ***Bochar v. J.B. Martin Motors***, 374 Pa. 240, 242, 97 A.2d 813, 814 (1953). It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's. ***Elza***, 396 Pa. at 115, 152 A.2d at 240 (citing ***Paustenbaugh v. Ward Baking Co.***, 374 Pa. 418, 97 A.2d 816 (1953)). However, where the injustice of the verdict "stand[s] forth like a beacon", a court should not hesitate to find it inadequate and order a new trial. ***Elza***, 396 Pa. at 118, 152 A.2d at 241; ***Slaseman***, 309 Pa.Super. at 540; 455 A.2d at 1215.

***Id.*** at 4. "The mere fact that a verdict is low does not necessarily mean that it is inadequate[.]" ***Alexander v. Knight***, 177 A.2d 142, 146 (Pa.Super. 1962), citing ***Palmer v. Leader Publ'g Co.***, 7 Pa.Super. 594 (1898).

> The amount of a jury verdict will rarely be held inadequate on appeal. Moreover, we emphasize that it is the province of the jury to assess the evidence and to accept or reject conflicting testimony given by witnesses. Even if testimony is uncontradicted, the jury is not required to accept everything or anything a party presents.
>
> ***Dawson v. Fowler***, 384 Pa.Super. 329, 558 A.2d 565, 567 (1989), ***appeal denied***, 523 Pa. 636, 565 A.2d 445 (1989) (citations omitted). A verdict will not be set aside if the verdict bears a reasonable resemblance to the proven damages. ***Hill v.***

> ***Commonwealth, Bureau of Corrections***, 124
> Pa.Commw. 172, 177, 555 A.2d 1362, 1365 (1989).

***Gallagher v. Marguglio***, 632 A.2d 1309, 1311 (Pa.Super. 1993), ***appeal denied***, 645 A.2d 1316 (Pa. 1994). "We have held that seemingly low and unfair jury verdicts are nevertheless adequate when the jurors are presented with conflicting testimony on liability, contributory negligence or degree of injury." ***Id.***, citing ***Dawson***; ***see also Alexander***, 177 A.2d at 146 ("As stated in ***Elza v. Chovan***, [] 152 A.2d at page 240 'compromise verdicts are both expected and allowed. The compromise may arise out of damages or negligence or the balance of evidence concerning either or both.'" (additional citations omitted).)

"Pain may be subjective, and [] if believed, is compensable." ***Gallagher***, 632 A.2d at 1311, quoting ***Boggavarapu v. Ponist***, 542 A.2d 516, 518 (Pa. 1988) (citation omitted). "The jury must assess the evidence and may accept or reject conflicting testimony given by witnesses. This court will not substitute its judgment for that of the jury." ***Gallagher***, 632 A.2d at 1312, citing ***Dawson***.

Instantly, although liability was conceded, the jury was presented with conflicting testimony on the degree of Smith's injuries, particularly to the left knee. At the time of the accident, Smith was on disability. (Notes of testimony, 9/10/14 at 15.) Smith suffered from chronic health conditions, including multiple sclerosis, high blood pressure, and diabetes. (***Id.*** at 16,

67.) In addition, she had a left knee replacement before the accident. (*Id.* at 17-18.)

According to Smith, the rear-end impact caused her left knee to hit something, which she identified as, "The dashboard, the part where the thing you have to shift the gears." (*Id.* at 22.) According to Smith, she told first responders, as well as emergency room personnel, that she hurt her left knee. (*Id.* at 24-25.) However, EMS records indicate that while Smith complained of head and back pain, she did not complain about her knee. (Deposition of Leonard Brody, M.D., 7/28/14 at 21.) Similarly, ER records did not reflect any knee injury. (*Id.* at 21-22.) Maxwell Stepanuk, Jr., D.O., Smith's medical expert, conceded that the paramedic's report from the date of the accident, as well as the ER records, did not indicate any complaints of knee pain. (Deposition of Maxwell Stepanuk, Jr., D.O., 7/30/14 at 39-41.) Furthermore, Dr. Singer's initial report did not indicate that Smith struck her knee as a result of the accident. (*Id.* at 42-43.) This contradicts Smith's trial testimony that she told Dr. Singer she was suffering from knee pain. (Notes of testimony, 9/10/14 at 29.)

In fact, when Dr. Stepanuk first examined Smith on January 19, 2011, three months after the accident, she did not make any complaints of knee pain. (Stepanuk deposition at 46.) Dr. Stepanuk's initial report indicates that there were no complaints of pain in either lower extremity. (*Id.*) Dr. Stepanuk specifically asked Smith whether she had struck any body

parts as a result of the accident. (*Id.*) Smith did not tell Dr. Stepanuk that she had struck her knee. (*Id.*)

Smith testified that she continues to have problems with her left knee. (Notes of testimony, 9/10/14 at 34.) She stated that it feels weak and sometimes it buckles on her. (*Id.*) She also complained of back and neck pain. (*Id.* at 35-36.) Smith testified that she is unable to enjoy certain activities as she did before the accident, including volunteering at church and taking her grandchildren to the park. (*Id.* at 36-37.) Smith has to use a riding scooter to go shopping. (*Id.* at 37-38.) Smith testified she needs a walker when she leaves the house. (*Id.* at 38.)

On cross-examination, Smith admitted that during her deposition, when asked whether she had taken any vacations since the accident, she testified that she went to Atlantic City in the summer of 2012. (*Id.* at 60-61.) Smith omitted that she had recently taken a trip to Las Vegas and a cruise. (*Id.* at 61-65.) The defense also produced photographs from Smith's Facebook account of a July 4, 2014 block party. (*Id.* at 68-69.) Smith is depicted standing in high heels and posing for photographs. (*Id.* at 70-72.)

Dr. Brody reviewed an x-ray of Smith's left knee taken March 4, 2010, approximately seven months before the accident. (Brody deposition at 17.) The radiologist identified some loosening in the left knee. (*Id.* at 18, 39.) Dr. Stepanuk agreed that Smith had a pre-existing left knee condition, a

loosening of the tibial plateau, prior to the accident. (Stepanuk deposition at 59.) Smith was also using a cane prior to the accident. (*Id.* at 62; Brody deposition at 25.) Dr. Brody diagnosed Smith with soft tissue sprains/strains to her neck and low back as a result of the October 26, 2010 accident. (*Id.* at 28.) In his opinion, these would have resolved in 4-8 weeks. (*Id.* at 30.) Dr. Brody testified that Smith's second knee surgery was not related to the accident. (*Id.* at 29.)

Regarding the force of impact, Smith testified that the trunk of Regina's car was all smashed in. (Notes of testimony, 9/10/14 at 27.) Smith testified that if she had not been wearing her seat belt, she "probably would've went [sic] through the window." (*Id.* at 21.) Regina testified that her car had to be towed from the scene and that she incurred close to $4,000 in repair costs. (Notes of testimony, 9/11/14 at 19-20.) Regina and Smith both identified photographs as fair depictions of the vehicle immediately after the accident. (Notes of testimony, 9/10/14 at 26-27; notes of testimony, 9/11/14 at 19; Plaintiffs' Exhibit 10.)

This testimony was in contrast with that of the defendant, Gee, who testified that he was traveling no more than 5 miles per hour when he struck the rear of Regina's vehicle. (Notes of testimony, 9/11/14 at 87.) His airbags did not deploy, and Regina's vehicle was not pushed forward. (*Id.*) Gee testified that Plaintiffs' Exhibit 10 did not accurately depict the condition

of Regina's vehicle after the accident. (**Id.** at 89.) Gee testified that Regina's vehicle did not sustain that amount of damage. (**Id.**)

Similarly, Michelle Lahalih ("Lahalih"), a fire service paramedic who responded to the accident and prepared a report, characterized the damage to Regina's vehicle as "very minor." (**Id.** at 76-77.) Lahalih's report indicated, "Patient was restrained. Very minor damage to rear vehicle noted. Unknown speed. No damage to seat belt or compartment noted." (**Id.** at 78.) Looking at the photographs taken by the plaintiffs, Lahalih testified to them as showing moderate damage. (**Id.** at 81.) However, at the scene, she saw only very minor damage to the vehicle. (**Id.** at 83.)

The crux of Smith's argument is that because the jury found she met the limited tort threshold of proving a serious injury,[1] the $500 award for non-economic damages was inadequate as a matter of law. However, Smith has cited no case law in support of the proposition that the jury must award a certain amount of damages whenever it finds that the plaintiff in a limited tort case has sustained a serious injury. The jury could have determined that Smith sustained a serious impairment of body function as a result of the accident, but that it was temporary and fleeting.

As stated above, where the jury is presented with conflicting testimony on the degree of injury sustained, a seemingly low or unfair jury verdict will

---

[1] "Serious injury" is defined as, "A personal injury resulting in death, **serious impairment of body function** or permanent serious disfigurement." 75 Pa.C.S.A. § 1702.

not be overturned. ***Gallagher***, 632 A.2d at 1311. Here, while negligence was not an issue, the degree of Smith's injuries was vigorously contested. Smith had serious and chronic pre-existing conditions, including diabetes, MS, and high blood pressure. She had a total left knee replacement before the accident. Medical records indicated some loosening in the left knee joint prior to the accident.

Moreover, Smith's credibility was an issue at trial. She testified that she told the paramedics, ER staff, and her physicians about her left knee pain, but the medical records indicate otherwise. She omitted details about vacations she took after the accident. Facebook photos showed her walking around in high heels at a neighborhood block party, even though she testified she could not walk without the assistance of a walker. She and Regina testified to extensive damage to the vehicle, which was contradicted by both Gee and an independent witness, Lahalih. Taken together, it is likely that the jury did not consider Smith to be particularly credible. It appears that the jury's small award for pain and suffering was a compromise verdict. For these reasons, the trial court did not abuse its discretion in denying Smith's motion for a new trial on damages.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2016